## Alexander *versus* Miller, Reed & Co.

A wife cannot make any contract to bind her husband without his authority express or implied, or dispose of his property, except perhaps in case of necessity for the immediate use of his family.  And where the husband is a *lunatic*, she cannot transfer his property to pay a particular creditor to the prejudice of others. ·

ERROR to the Common Pleas of *Mifflin county*.

This was a *scire facias* on a recognizance, issued in favor of Miller, Reed & Co., against Napoleon B. Alexander, as bail for stay of execution on a judgment before a justice of the peace, in favor of Miller, Reed & Co. *vs.* William A. Alexander.    The recognizance of N. B. Alexander, on which the sci. fa. was issued, was dated 30th January 1843, and the stay of execution expired on the 12th October 1843.    On the 28th July 1843, before the stay of execution had expired, and when William A. Alexander, the defendant in the above judgment, was in a deranged state of mind, and then confined, for his cure, in the Insane Hospital, in the county of Philadelphia, Edith, (wife of William A. Alexander,) Napoleon B. Alexander, the above named defendant, and David C. Miller, one of the firm of Miller, Reed & Co., entered into the following agreement :

KISHACOQUILLAS, July 28th, 1843.

Agreement for the purchase and sale of a crop of wheat, made the above date, by and between Edith W. Alexander, by and with the advice of Napoleon B. Alexander, of Union township, Mifflin county, of the one part, and David C. Miller, of Brown township, county aforesaid, of the other part, witnesseth, that the said party of the first part agrees to sell to the said David C. Miller, of the second part, all their crop of wheat, now in the barn, and in one stack beside the barn—say one hundred bushels, more or less—whatever will be of it, except what will be bread for the family, and pay what school-tax he owes to James Poe—at one dollar per bushel, or market price.    The wheat is considered to be now delivered ; and if N. B. Alexander can thresh and haul said wheat for said Edith, he is to do it as soon as he can get it done so as not to stop his other farming or putting out his seed.

Received pay at the rate of one dollar per bushel, for one hundred bushels—the balance to be understood or ascertained when the wheat is threshed.    Signed by Edith W. Alexander, Napoleon B. Alexander, and D. C. Miller.

The wheat was not taken away by Miller, Reed & Co., but, on the 3d of October 1843, was levied upon by the sheriff of Mifflin county, as the property of the said William A. Alexander, and, on

the 14th of the same month, was by him sold upon a fi. fa. at the. suit of J. & J. Milliken *v.* William A. Alexander. The stay of execution upon the said judgment of Miller, Reed & Co. *vs.* William A. Alexander, expired on the 12th of October 1843, and on the 19th of that month an execution issued thereupon, and was returned " no goods;" whereupon this action was brought by scire facias upon the recognizance; tried March 17th 1849, and verdict rendered in favor of the plaintiff.

On the trial, WILSON J., charged, *inter alia* :—The defendant alleges that he was released, by the agreement entered into on the 28th of July 1843, between David C. Miller, the wife of William Alexander, and Napoleon Alexander, (William, at that time, being insane, and in the hospital, as testified to.) Miller, Reed, & Co. had taken out an execution on their judgment, on the 14th of August, returnable on the 3d of December 1843, which was before the stay of execution was up, which he directed to be returned; *and while it was in the hands of the constable, this agreement was entered into,* by which David C. Miller was to get the grain, which was afterwards sold by Millikens, on their judgment. Miller, not in the name of Miller, Reed & Co., but in his own name, entered into the agreement, and the parties acknowledged a receipt of $1 per bushel, for 100 bushels of the grain, the balance to be understood or ascertained when the wheat is threshed. How, or under what circumstances, the execution in August was issued before the expiration of the stay, we are not informed. But, to this agreement we find Napoleon B. Alexander, who, there is some proof, was attending to the affairs of William Alexander on the farm, for his wife, a party. It may have been at his instance, to secure this property for his liability on the judgment. James says there was no money paid to Miller, but that the amount receipted was considered to satisfy a judgment of Miller, Reed & Co. against William A. Alexander, in which Napoleon was bail.

We do not think that the agreement for the sale of this property, under the circumstances, could be enforced; and, certainly, the property not having been taken into actual possession by Miller, it was subject to levy and sale on Millikens' judgment; still, if you are satisfied that Miller took the risk of the agreement, and agreed thereby to discharge Napoleon from his liability on his recognizance, the defendant would not be liable in this suit. There is no question that, the grain remaining in the possession of William A. Alexander or those having the custody of his effects, and it being sold by legal process and applied to William's debts, William A. Alexander would remain liable on the judgment; and the question, as we have said, is, if Miller, by his agreeing to treat the property as delivered, and in discharge of Napoleon Alexander from his recognizance, took upon himself the risk under the agreement, whether the plaintiff cannot recover. But if he did

[Alexander *v.* Miller, Reed & Co.]

not take upon himself the risk of the agreement being carried out, and Napoleon and Mrs. Alexander agreed to deliver this grain in payment of the judgment, which was not done, it would not be a payment, and the plaintiff is entitled to recover the value of the personal property William A. Alexander had on hand when the recognizance was entered into, towards or in satisfaction of his debt.

To this opinion defendant's counsel excepted.

Verdict was rendered for plaintiff, for $116.35.

It was assigned for error:

1. The court erred in instructing the jury that the agreement made between Edith W. Alexander, Napoleon B. Alexander, and D. C. Miller, under the circumstances, could not be enforced.

2. The court erred in submitting to the jury a fact of which there was no evidence, to wit, whether or not N. B. Alexander and Mrs. Alexander agreed to deliver the grain mentioned in the agreement to Miller, Reed & Co.

3. The court erred in saying to the jury that "while" an execution "was in the hands of the constable, this agreement was entered into."

4. That the court erred in instructing the jury that plaintiff could recover, but should have instructed that the defendant was discharged by the agreement from his liability.

*J. Alexander*, for plaintiff in error, contended that where a wife is left with the care of her husband's farm, goods, and effects, she is, in the absence of her husband, to be considered as the head of the family and the general agent of her husband; and more especially, as in this case, where the husband is prostrated by disease, and wholly unable to make any contracts or to provide for his family; her contracts made for the payment of his debts, and for the support of the family, are binding upon the husband, and all other parties thereto. Felker *v.* Emerson, 16 *Ver.* 653.

That the court, in their charge, mis-stated the evidence to the jury, by saying to them that "Miller, Reed & Co. had taken out an execution on their judgment, on the 14th of August, returnable on the 3d of December 1843, which was before the stay of execution was up, which he directed to be returned, and while it was in the hands of the constable, this agreement was entered into."

*E. L. Benedict*, for defendant.—The facts of this case appear to be correctly stated in the charge of the court, except that "while the execution was in the hands of the constable, the agreement was entered into, by which David C. Miller was to get the grain which was afterwards sold by Millikens on their judgment," which was entirely *immaterial*, and was evidently an oversight, as

[Alexander *v.* Miller, Reed & Co.]

the dates of the executions and the agreement are correctly stated by the court.

The agreement could not be enforced under the circumstances. There was no evidence that Mrs. Alexander was the agent of her husband; and if she were authorized to act for him, the agreement was void as against creditors, and the grain mentioned in it was sold by the sheriff, and the proceeds applied to the payment of Alexander's debts. It was to be threshed and delivered by her, or N. B. Alexander, the quantity ascertained, and an amount deducted sufficient for the family, and to pay the school-tax due to Poe. The property remained where it was at the date of the agreement, when levied on by virtue of Millikens' execution. A transfer of personal property, unaccompanied by a corresponding change of possession, is void as against creditors: Streeper *v.* Eckart, 2 *Whar.* 302; Hoofsmith *v.* Cope, 6 *Whar.* 58; Stark *v.* Ward, 3 *Barr* 329; Jordan *v.* Frink, 3 *Barr* 443; McBride *v.* McClelland, 6 *W. & Ser.* 94; Cadbury *v.* Nolan, 5 *Barr* 326; Clow *v.* Woods, 5 *Ser. & R.* 278; Baab *v.* Clemson, 10 *Ser. & R.* 419; Cunningham *v.* Neville, 10 *Ser. & R.* 202.

David C. Miller acted for himself individually, and not for Miller, Reed & Co.

*Alexander*, in reply.—It would be unfortunate if nothing could be done for the support of the family of a lunatic until the appointment of a committee.

The opinion of the court was delivered May 27, by

ROGERS, J.—This case may be safely rested on the opinion of the learned judge who tried the cause. The facts are correctly stated by Judge WILSON, with the exception of the immaterial error contained in the remark "that while the execution was in the hands of the constable the agreement was entered into by which David C. Miller was to get the grain which was afterwards sold by Millikens on their judgment."

The court charged the jury that the agreement for the sale of the property, under the circumstances, could not be enforced. On this point the whole case turns. For if the court be correct in this position, it puts an end to the defence, for the defence is confessedly based on the validity of that contract. The agreement referred to is for the sale of a crop of wheat belonging to the husband, William A. Alexander, which Edith W. Alexander, his wife, by and with the advice of Napoleon B. Alexander, the bail on the recognizance now in suit, undertook to make to David C. Miller, one of the firm of the plaintiffs, Miller, Reed & Co. The objection to the sale is, that there is no evidence, either express or implied, that Mrs. Alexander was the agent of her husband, and

consequently no title to the property passed to the vendee. The law, with a view to the safety of the husband, disables a wife from making any contract, or incurring any debt binding her, without his concurrence or authority. An express or implied authority is the test by which all cases must be determined in regard to the husband's liability for her engagements while they cohabit; for a married woman cannot make any contract to bind her husband, except by his express or implied authority : 2 *Roper, Husband and Wife*, 110–11. It is, however, said that there are exceptions to this rule, on the principle of necessity, and that this is a case of that description; that the husband was a lunatic, and, at the time of the contract, in the Insane Hospital in the city of Philadelphia ; that the contract was advantageous to the husband, being made to save his estate from the executions of creditors. The plaintiff in error assumes that the contract was for the benefit of the estate; but of this I see but little, if any evidence. That it was for the benefit of Napoleon B. Alexander, the bail, may be admitted; but it is not so clear it was for the advantage of the husband; certainly not so much so as to justify them in disposing of the husband's property, the only effect of the sale being to prefer one creditor to another. Nor was there, that I perceive, any necessity for the sale. The law points out a mode of meeting a case of this description, namely, by a commission of lunacy and the appointment of a committee to take care of the person and estate. It would be disastrous to that unhappy and unfortunate class of citizens, to be stripped of their property at the will and pleasure of persons wholly irresponsible, under specious pretexts of necessity. That the wife had express authority cannot be pretended, for the husband was incapable of giving consent, nor can it be implied, for the plain reason that from imbecility of mind he was incapacitated from giving assent. Felker *v.* Emerson, 16 *Ver.* 653, is relied on by plaintiff in error. Not having an opportunity of consulting the case itself, we must take the principle declared from the syllabus, as stated in 2 *U. S. D.* 125. That case rules, that where a wife is left with the care of the husband's farm, goods, and effects, she is, in the absence of her husband, to be considered as the head of the family, and the general agent of her husband; more especially (it is added) when the husband is prostrated by disease, and wholly unable to make any contract, or to provide for his family, her contracts made for the payment of his debts, and for the support of the family, are binding on the husband, and all parties thereto. If that case be as I suppose, I have not the slightest disposition to disturb it. It accords with the acknowledged principle that a husband may be bound by her contracts where room is left for the implication of authority in her to contract. The court thought, with some show of reason, this to be the case where she was permitted to superintend his affairs

.with his knowledge, and therefore, as might well be presumed, with his consent. Under those circumstances, she might with great propriety be deemed his general agent. Although confined to his bed by sickness, and therefore incapable of attending personally to business, yet he had, as I suppose, mind to assent to her acts as his agent; at least the contrary does not appear. But how can you imply an authority to act for him, when, reason having left its throne, the party is incapable of giving any consent whatever? To imply an assent under such circumstances, with respect be it spoken, would be absurd. And where is the necessity of the implication of agency, when the law has made ample provision for the protection of all parties placed in this unfortunate position? That sudden exigencies may arise which would justify the sale of part of the property for the immediate use of the family, it is not my purpose to deny. It ought, however, to be a clear case of necessity, very different from the one here presented.

Judgment affirmed.